UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **THIERNO MANSOUR SALL,**<br>Petitioner,<br>**v.**<br><br>**KEVIN RAYCRAFT, Field Office Director of Enforcement and Removal Operations, Detroit Field Office, Immigration and Customs Enforcement; JULIE MASSENGILL, Jail Administrator of the Monroe County Jail; MARKWAYNE MULLIN, Secretary, U.S. Department of Homeland Security; UNITED STATES DEPARTMENT OF HOMELAND SECURITY; TODD BLANCHE, Acting U.S. Attorney General; and EXECUTIVE OFFICE FOR IMMIGRATION REVIEW**<br>Respondents. | **2:26-CV-12517-TGB-PTM**<br><br>HON. TERRENCE G. BERG<br><br>**ORDER GRANTING HABEAS PETITION (ECF No. 1)** |

Presently before the Court is Thierno Mansour Sall ("Petitioner" or "Sall")'s Habeas Petition brought under 28 U.S.C. § 2241. ECF No. 1. Sall has been in post-removal detention pursuant to 8 U.S.C. § 1231 since either January 6 or 7, 2026. *See* ECF No. 1, PageID.7 (stating that Sall was detained on January 6, 2026); ECF No. 4-2, PageID.80 (stating that Sall was detained on January 7, 2026). He seeks immediate relief from

his current detention. ECF No. 1, PageID.20. For the following reasons, Sall's Petition will be **GRANTED**.

## I. BACKGROUND

Sall was born in 1979 in Mauritania. ECF No. 1, PageID.5. He first entered the United States in 2001 at JFK Airport seeking asylum. ECF No. 1, PageID.6. On August 27, 2001, the Immigration and Naturalization Service ("INS") denied his application. ECF No. 1-4, PageID.30–31. Based on Petitioner's exhibits, INS issued its Notice to Appear in removal proceedings on August 24, 2001. ECF No. 1-5, PageID.32. Sall received service of that Notice to Appear on August 27, 2001. *Id.* at PageID.33. On February 1, 2002, an immigration judge in Memphis, Tennessee Immigration Court denied Petitioner's application for asylum. ECF No. 4-2, PageID.79. On March 4, 2002, Sall filed a Notice of Appeal of the immigration judge's decision to the Board of Immigration Appeals ("BIA"). *Id.* The BIA dismissed his appeal on September 8, 2003, leading to a final removal order. *Id.*

A field office for Enforcement and Removal Operations ("ERO") at U.S. Immigration and Customs Enforcement ("ICE") served Sall with a Form I-220B, Order of Supervision based on his final order of removal on July 23, 2009. ECF No. 4-2, PageID.80. Sall consistently reported to the ICE Office in Detroit over the next 17 years. ECF No. 1, PageID.6–7. At one of those appointments on November 5, 2019, Sall was instructed to apply for a passport. ECF No. 4-2, PageID.80. He sent a letter to the

Mauritanian Embassy in December of that year requesting help to obtain a travel document to Sierra Leone. ECF No. 1-11, PageID.40.

On January 6, 2026, during a visit to Detroit, Sall drove on the Ambassador Bridge to Canada and eventually was taken into custody. ECF No. 4-2, PageID.80. On February 1, 2026, the ICE ERO office served Sall with a Form I-229(a), Warning for Failure to Deport, which he refused to sign. *Id.* The next day, ERO Headquarters forwarded a Travel Document Request to the Embassy of Mauritania in Washington, D.C. *Id.* Later that month, ICE ERO served Sall with a Notice to Alien of Interview for Review of Custody Status, a Notice to Alien of File Custody Review, and a Form I-229(a), Warning for Failure to Depart. *Id.* at PageID.81. ICE scheduled his interview for March 23, 2026. ECF No. 1-12, PageID.42. But Petitioner received a post-custody review interview on March 10, 2026. ECF No. 4-2, PageID.81.

Respondents allege that ICE ERO served Sall with a Notice of Revocation of Release on March 26, 2026. *Id.* Petitioner alleges that he never received that notice and that there is no definitive evidence that he ever received it. ECF No. 5, PageID.102. ICE ERO's Detroit Office recommended continued detention to its headquarters due to risk of flight and likelihood of removal on June 30, 2026. ECF No. 4-2, PageID.81. He has remained in ICE custody since then, without receiving

any word about his requested travel documents from Mauritania. *Id.* at PageID.81–82.[1]

## II. STANDARD OF REVIEW

### *A. Habeas Petition, 28 U.S.C. § 2241*

Several statutes within the INA divest the district court's authority to hear cases in the immigration context, including under § 2241. For instance, 8 U.S.C. § 1226(e) states that:

> The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole."
>
> 8 U.S.C. § 1226(e).

Nonetheless, district courts have jurisdiction over petitions for habeas corpus where a petitioner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). And the Fifth Amendment entitles noncitizens to due process of law. *Reno v. Flores*, 507 U.S. 292, 306 (1993); *see also Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020) (citing *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001)) (finding that the Due Process Clause covers noncitizens, whether their presence in the United States is "lawful, unlawful, temporary, or permanent").

[1] The Court could not find Petitioner on ICE's online inmate locator. But it received an email from the Detroit ICE ERO Office on September 19, 2026 that he is located at the Monroe County Inmate Dormitory.

Thus, federal courts retain jurisdiction over habeas petitions challenging the constitutionality of the arrest and detention in question, including the validity of post-removal detention of noncitizens. *See Jennings v. Rodriguez,* 583 U.S. 281, 295 (2018) ("§1226(e) precludes an alien from challenging a 'discretionary judgment' by the Attorney General or a 'decision' that the Attorney General has made regarding his detention or release, but does not preclude 'challenges [to] the statutory framework that permits [the alien's] detention without bail.'") (cleaned up); *Zadvydas*, 533 U.S. at 688 ("§ 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention."); *Malam v. Adducci*, 452 F. Supp. 3d 643, 650 (E.D. Mich. Apr. 6, 2020) (Levy, J.) (finding claim challenging the fact, not conditions, of petitioner's immigration detention was "cognizable in habeas").

### *B. Removal Period Detention, 8 U.S.C. § 1231*

The provision at issue in this case, 8 U.S.C. § 1231, outlines the general process for detaining noncitizens who have been ordered removed. Under the statute, "the Attorney General shall remove the alien from the United States within a period of 90 days" when they are "ordered removed." § 1231(a)(1)(A). For noncitizens whose removal order has not been judicially reviewed and who were not recently released from non-immigration-based detention, the removal period begins on "[t]he

date the order of removal becomes administratively final." § 1231(a)(1)(B). The removal period

> shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal.

§ 1231(a)(1)(C).

If the noncitizen "does not leave or is not removed within the removal period, the alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney General." § 1231(a)(3). Indeed, the Supreme Court "has 'read an implicit limitation' into the statute 'in light of the Constitution's demands,' and has held that an alien may be detained only for 'a period reasonably necessary to bring about an alien's removal from the United States.'" *Johnson v. Guzman Chavez*, 594 U.S. 523, 529 (2021) (quoting *Zadvydas*, 533 U.S. at 689 (2001). "If no exception applies, an alien who is not removed within the 90-day removal period will be released subject to supervision." *Johnson*, 594 U.S. at 529.

## III. DISCUSSION

### *A. Proper Respondents*

Petitioner files this action against Kevin Raycraft ("Raycraft"), Director of the Detroit Field Office of ICE's Enforcement and Removal Operations Division; Julie Massengill, Jail Administrator of the Monroe

County Jail; Markwayne Mullin ("Mullin"), Secretary of the U.S. Department of Homeland Security; the U.S. Department of Homeland Security (DHS); Todd Blanche, Acting U.S. Attorney General; and the Executive Office for Immigration Review ("EOIR"). ECF No. 1, PageID.4–5. The Respondents argue that only "the warden of his detention facility" should remain in suit. ECF No. 4, PageID.66. However, "if the Court finds that petitioner's immediate custodian is the individual with legal authority over his removal, then only the ICE District Director is the proper respondent." *Id.*

Typically, a district court can only direct a writ of habeas corpus "to the person having custody of the person detained." 28 U.S.C. § 2243. This doctrine, commonly known as the immediate custodian rule, "generally applies to alien habeas corpus petitioners." *Roman v. Ashcroft*, 340 F.3d 314, 322 (6th Cir. 2003). Still, the Sixth Circuit has recognized that "it may be appropriate to recognize the Attorney General as a proper respondent to an alien's habeas corpus petition under certain circumstances." *Id.* at 324–25. One such example occurs when the government "den[ies] aliens any meaningful opportunity to seek habeas corpus relief simply by transferring aliens to another district any time they filed a habeas corpus petition." *Id.* at 326. Petitioner has alleged precisely that. ECF No. 5, PageID.99 ("ICE routinely moves detainees between districts."). Given this well-founded concern, the Court will retain Massengill, Raycraft, and Mullin as the proper Respondents in

this habeas action. *See Fam v. Raycraft*, No. 2:26-cv-12182, 2026 WL 2350885, at *2 (E.D. Mich. Aug. 12, 2026) (maintaining Raycraft and Mullin as proper respondents in a recent immigration habeas case).

### *B. Zadvydas Claims*

Petitioner claims that Respondents have violated his Due Process rights by detaining him for more than six months under circumstances where a timely removal is not reasonably foreseeable. ECF No. 1, PageID.9. He argues that the Supreme Court's decision in *Zadvydas* prohibits such open-ended detention. ECF No. 1, PageID.11. In that case, the Court recognized that "Congress previously doubted the constitutionality of detention for more than six months." *Id.* at 701. After six months have passed, "once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* While that does not mean that every noncitizen will be released after six months of detention, those unlikely to be removed in the "reasonably foreseeable future" must be released. *Id.*

Respondents respond that they are acting well within their statutory authority and have not violated Petitioner's Fifth Amendment rights. ECF No. 4, PageID.67–68. Respondents point out that in certain situations, they can constitutionally detain a noncitizen significantly

longer than the removal period. ECF No. 4, PageID.68 (citing *Martinez v. Larose*, 968 F.3d 555, 565–66 (6th Cir. 2020)).

While it is true that post-removal detentions exceeding six months may be justified under some circumstances, *Martinez* involved facts quite distinguishable from those in this case. There, the Sixth Circuit held that a noncitizen's removal was significantly likely in the reasonably foreseeable future because the only impediment to his removal was the resolution of the various appeals both to the BIA and in federal court. *Id.* at 565. Here, the problem is a lack of cooperation with Mauritania. *See* ECF No. 1-11, PageID.40–41 (showing Petitioner's request for travel documents in 2019); ECF No. 4-2, PageID.80–82 (showing ICE ERO headquarters forwarding Travel Document Request in February 2026 and has still been waiting on said documents).

Petitioner in this case is not merely awaiting the certain and inevitable timely outcome of any legal process. Instead, he and Respondents are waiting for the cooperation of a foreign sovereign that is completely outside the control of either party and cannot be reliably predicted. Respondents posit that Mauritania's repatriation agreement with the United States and its regular practice of issuing travel documents provides sufficient support of a "significant likelihood of removal in the future." ECF No. 4, PageID.70 (quoting *Zadvydas*, 533 U.S. at 701). But the Government has provided no evidence showing that the provision of these documents is imminent. Conversely, the record

shows that Sall has been waiting on travel documents for almost seven years, ECF No. 1-11, PageID.40, and Respondents have been waiting on documents for over seven months, ECF No. 4-2, PageID.80–82. On those facts, Petitioner has demonstrated that there is "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701.

Respondents have not presented any evidence to rebut that presumption. Requiring Petitioner to wait however long it may take to prove that Mauritania refuses to provide the necessary documents would only further prejudice him, after already being detained well past the six-month presumption. *See Fam*, 2026 WL 2350885, at *4 (granting habeas relief for petitioner who was detained for more than six months and similarly had not received needed travel documents from Mauritania). By continuing to detain him, without any knowledge of when Mauritania will reply, Respondents have violated Sall's Due Process rights.

Accordingly, Sall's Habeas Petition is **GRANTED.** Since the Court concludes that Respondents have violated his Due Process rights, it will not address his remaining arguments.

## IV. CONCLUSION

For the reasons stated above, the Court **DISMISSES** the Petition against Respondents Todd Blanch, DHS, and EOIR. Petitioner's Habeas Petition (ECF No. 1) is **GRANTED.** Respondents are **HEREBY ORDERED** to immediately release Thierno Mansour Sall under reasonable conditions of supervision as determined by Respondents no later than September 29, 2026.

**IT IS FURTHER ORDERED** that Respondents shall file a Status Report with this Court on or before October 6, 2026, to certify compliance with this Order. The Status Report shall include whether Petitioner is still detained, and the reasons for his continued detention.

**SO ORDERED.**

Dated: September 22, 2026

s/Terrence G. Berg

HON. TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE